[Cite as *State v. Walters*, 2012-Ohio-2429.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

STATE OF OHIO

    Appellee

    v.

RICHARD WALTERS

    Appellant

C.A. No.      11CA0039-M

APPEAL FROM JUDGMENT
ENTERED IN THE
MEDINA MUNICIPAL COURT
COUNTY OF MEDINA, OHIO
CASE No.    10 TRC 05931

DECISION AND JOURNAL ENTRY

Dated: June 4, 2012

DICKINSON, Judge.

INTRODUCTION

**{¶1}** Richard Walters told police that he had spent the day drinking beer at a golf tournament that he had won, but he offered no explanation for stopping on the way home to park behind a commercial building when the business was closed. After questioning him and administering field sobriety tests, police arrested him for operating a vehicle under the influence of alcohol. Following his arrest, Mr. Walters submitted to a breathalyzer test at the police station. The City of Medina charged him with operating a vehicle while under the influence of alcohol and operating a vehicle with a prohibited breath alcohol concentration. After the trial court denied his motion to suppress the evidence, Mr. Walters changed his plea to no contest to the charge of operating a vehicle while under the influence of alcohol, and the City dismissed the other charge. Following sentencing, Mr. Walters appealed, arguing that his arrest was not based on probable cause, the results of the field sobriety tests should have been suppressed because the

2

officer did not conduct them in substantial compliance with applicable standards, and the result of the breathalyzer test should have been suppressed because his consent was the result of coercion or duress. This Court affirms because, based on police observations and Mr. Walters' admissions at the scene, police had probable cause to arrest him for operating a vehicle under the influence of alcohol, his challenge to the field sobriety tests addressed the weight not admissibility of the evidence, and his post-arrest breath test was conducted via statutory implied consent.

BACKGROUND

{¶2} At 7:45 p.m. on September 5, 2010, a police officer noticed a car parked near a dumpster in the parking lot of a business that was closed. The officer noted that the car was not parked in a parking space and a man was standing outside the open driver's door. When he approached, the officer found in the driver's seat a woman who appeared to be extremely intoxicated. The woman had great difficulty speaking, was not wearing any clothing from the waist down, and required assistance locating her underwear and skirt. Police questioned the couple and learned that they were driving home from a golf tournament at Hinckley Hills. The man, identified as Mr. Walters, admitted that he had been drinking and that he had driven the car from Hinckley. He also admitted that he had been engaged in sexual conduct with his female companion when officers arrived.

{¶3} The City of Medina charged Mr. Walters with two first-degree misdemeanors for operating a vehicle while under the influence of alcohol and operating a vehicle with a prohibited breath alcohol concentration. R.C. 4511.19(A)(1)(a); 4511.19(A)(1)(d). After entering a plea of not guilty, Mr. Walters moved the trial court to suppress all evidence obtained as a result of his encounter with police including the officers' observations, Mr. Walters' statements, and the

results of all sobriety testing. The trial court held a hearing on the motion and denied it. Mr. Walters then changed his plea to no contest to the charge of operating a vehicle while under the influence of alcohol, and the City dismissed the second charge. Following his conviction, Mr. Walters appealed.

## FIELD SOBRIETY TESTS

{¶4} Mr. Walters' second assignment of error is that the results of the field sobriety tests should have been suppressed because they were not conducted in substantial compliance with applicable standards. The Ohio Supreme Court requires that, to support a motion to suppress, a defendant must "state the motion's legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided." *State v. Shindler*, 70 Ohio St. 3d 54, 58, at syllabus (1994) (construing and following Rule 47 of the Ohio Rules of Criminal Procedure and *Xenia v. Wallace*, 37 Ohio St. 3d 216 (1988)). "By requiring the defendant to state with particularity the legal and factual issues to be resolved, the prosecutor and court are placed on notice of those issues to be heard and decided by the court and, by omission, those issues which are otherwise being waived." *Id.* at 58.

{¶5} In his motion to suppress, Mr. Walters argued that the field sobriety tests were not conducted in substantial compliance with the National Highway Traffic Safety Administration standards because he informed the officers at the scene that he had an eye injury and torn ligaments in both knees. According to Mr. Walters, the testing standards "indicate that these injuries may affect the reliability and accuracy of the field sobriety tests." He made no additional argument in support of his motion to suppress the results of the field sobriety testing standards at the hearing on his motion. Although he filed a supplemental written motion to suppress after the hearing, he did not include any argument regarding the field sobriety tests.

{¶6} On appeal, however, Mr. Walters has argued that the officer deviated from the testing manual in several specific ways. He has argued that the officer failed to give proper instructions for two of the tests, failed to look for all possible clues during the walk-and-turn test, failed to terminate the one-leg-stand test after thirty seconds, and scored an observation that was not listed in the manual as a clue for intoxication for the walk-and-turn test. As Mr. Walker did not present any of these arguments to the trial court for consideration, he has forfeited his opportunity to argue them on appeal. *See State v. Shindler*, 70 Ohio St. 3d 54, 58 (1994).

{¶7} Therefore, Mr. Walters' only argument in support of suppression of the field sobriety test results is that various injuries may have affected the reliability and accuracy of the results. This argument attacks the weight, not the admissibility of the evidence. Rather than addressing the officer's method of administering the tests, this argument focuses on the weight the trier of fact should give the results in light of Mr. Walters' injuries. The trial court acknowledged this concern by indicating that Mr. Walters' failure to follow the stimulus during the horizontal gaze nystagmus test "could be consistent with the nerve damage . . . or . . . impair[ment] by alcohol." Mr. Walters made no other arguments to the trial court in regard to the suppression of the field sobriety test. Therefore, the trial court properly denied his motion to suppress the field sobriety test results. Mr. Walters' second assignment of error is overruled.

PROBABLE CAUSE TO ARREST

{¶8} Mr. Walters' first assignment of error is that his motion to suppress evidence should have been granted because the arresting officer lacked probable cause to arrest him or to form an opinion that he was under the influence of alcohol while driving a car. A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St. 3d 152, 2003–Ohio–5372, ¶ 8. Generally, a reviewing court "must accept the trial court's findings

of fact if they are supported by competent, credible evidence." *Id. But see State v. Metcalf*, 9th Dist. No. 23600, 2007–Ohio–4001, ¶ 14 (Dickinson, J., concurring). The reviewing court "must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside*, 2003–Ohio–5372, at ¶ 8.

{¶9} In determining whether police had probable cause to arrest an individual for operating a vehicle while under the influence of alcohol, we must consider the totality of the facts and circumstances existing at the moment of arrest. *State v. Homan*, 89 Ohio St. 3d 421, 427 (2000) (superseded by statute on other grounds as set forth in R.C. 4511.19(D)(4)(b)). Probable cause exists if, "at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." *Id.*

{¶10} Even without positive results on field sobriety testing, the totality of the facts and circumstances may support probable cause to arrest for a violation of Section 4511.19(A) of the Ohio Revised Code. *State v. Sunday*, 9th Dist. No. 22917, 2006-Ohio-2984, at ¶ 32; *see State v. Homan*, 89 Ohio St. 3d 421, 427 (2000) (superseded by statute on other grounds as set forth in R.C. 4511.19(D)(4)(b)). "The amount of evidence necessary for probable cause to suspect a crime is being committed is less evidence than would be necessary to support a conviction of that crime at trial." *State v. McGinty*, 9th Dist. No. 08CA0039-M, 2009-Ohio-994, ¶ 11. "It is necessary to show merely that a probability of criminal activity exists, not proof beyond a reasonable doubt, or even proof by a preponderance of evidence that a crime is occurring." *Id.*

{¶11} In this case, Officer Daniel Hazek testified that he approached Mr. Walters' car because he noticed it parked behind the University Hospitals Urgent Care Center on Route 18 in Medina on a Sunday evening when the business was closed. The car was "parked at random"

near a dumpster and not within a marked parking space. This raised the officer's suspicions. According to Officer Hazek, when he first pulled up behind the car, he saw Mr. Walters outside near the driver's door behaving oddly and acting "[v]isibly nervous." The officer explained that Mr. Walters avoided eye contact with him and "[t]here was no rhyme or reason to what he was doing . . . just standing outside of the driver's door." He testified that he parked several car lengths away from the vehicle and did not turn on his overhead lights. He said that, when he pulled up, Mr. Walters went to the trunk of his car, removed two sets of golf clubs, set them up, then put them back into the trunk.

{¶12} When the officer approached and asked Mr. Walters what he was doing, Mr. Walters "babbled a little bit, something about golf." Officer Hazek said that he could not understand some of what Mr. Walters said, but he "knew immediately" that Mr. Walters was intoxicated. He explained that he smelled a strong odor of alcohol emanating from Mr. Walters, his actions were not deliberate, he was "fumbling around," his eyes were "very glassy," and his speech was slowed and slurred. The officer also testified that there was an extremely intoxicated woman in the driver's seat of the car. She was naked from the waist down, her speech was very difficult to understand, and she smelled strongly of alcohol. Mr. Walters told police that he was engaging in sexual conduct with his female passenger when the first officer approached them.

{¶13} Officer Cliff Harrison corroborated Officer Hazek's assessment that the smell of alcohol was coming directly from Mr. Walters. He also testified that Mr. Walters' eyes were red and glassy, but did not believe that his speech was impaired. Officer Harrison testified that Mr. Walters said that he had driven the car from Hinckley Hills where he had spent the day playing golf. The officer testified that Mr. Walters admitted to drinking seven beers during a golf tournament between nine o'clock in the morning and three-thirty in the afternoon. Mr. Walters

told the officer that, because he won the tournament he had stayed at the golf club until seven o'clock to attend an awards banquet before driving home.

{¶14} Officer Harrison administered three field sobriety tests: the horizontal gaze nystagmus test, the one-leg-stand, and the walk-and-turn. The trial court determined that Mr. Walters told the officers that he was unable to see well out of his right eye because of nerve damage. The evidence showed that Mr. Walters has a visible scar near his right eye. During the test, Mr. Walters' eyes did not follow the stimulus, so the officer was not able to obtain a score. The trial court noted that the failure to follow the stimulus could have been caused by either intoxication or nerve damage to the eye. During the one-leg-stand test, Mr. Walters miscounted, but he also balanced on one leg for almost 40 seconds and did not step off the line according to the trial court. The court also noted that Mr. Walters "clearly had trouble maintaining balance on one of the steps" of the walk-and-turn test. Apparently in light of these inconclusive results, despite denying the motion to suppress, the trial court refused to consider Mr. Walters' performance on the field sobriety tests in its determination of probable cause to arrest.

{¶15} Mr. Walters has argued that there was not probable cause to arrest him given that there was no evidence that he had driven erratically, caused a collision, or had any impairment of his motor skills. The evidence showed that he had no trouble retrieving his driver's license, getting the golf clubs in and out of the car, or following the officers' directions at the scene.

{¶16} Our review of the record indicates that, even without considering his performance on the field sobriety tests, at the moment of the arrest, the officers had gathered sufficient information to "cause a prudent person to believe that the suspect was driving under the influence." *State v. Homan*, 89 Ohio St. 3d 421, 427 (2000) (superseded by statute on other grounds as set forth in R.C. 4511.19(D)(4)(b)); see *State v. McGinty*, 9th Dist. No. 08CA0039-

M, 2009-Ohio-994, at ¶ 20. The officers observed that Mr. Walters' eyes were red and glassy, his speech was slurred, and a strong odor of alcohol was emanating from his person. Inside the car, police found an extremely intoxicated, half-naked woman. Mr. Walters admitted to drinking seven beers and driving the car from Hinckley Hills to Medina. As police had probable cause to believe that Mr. Walters was driving under the influence, his first assignment of error is overruled.

BREATHALYZER TEST

{¶17} Mr. Walters' third assignment of error is that the result of the breathalyzer test should have been suppressed because it was obtained through duress and police coercion. He has argued that the officer at the scene misstated the law and threatened to take blood by force if Mr. Walters refused to submit to a breath test. The State has argued that, even if police officers incorrectly advised Mr. Walters about the law applicable to a forcible blood draw, the remedy is not to suppress the evidence of the breath test.

{¶18} Mr. Walters refused to submit to the portable breath test at the scene, but did submit to BAC DataMaster testing at the Montville Township Police Department after his arrest. He elicited some testimony from officers at the suppression hearing tending to show that one or more of them may have erroneously advised him that they had the authority to draw blood by force if he refused to submit to the breathalyzer. Mr. Walters has argued that his consent was not freely and voluntarily given based on the totality of the circumstances. He has correctly argued that, with just one prior conviction for operating under the influence, the statute did not authorize police to forcibly draw his blood if he refused the breath test. See R.C. 4511.19.1(A)(5)(a), effective October 16, 2009 and 4511.19(G)(1)(c), effective April 7, 2009. The State has argued

that, even if police violated Mr. Walters' statutory right to refuse the breath test, the results are still constitutionally admissible.

{¶19} "As part of obtaining the privilege to drive in Ohio, a driver implicitly consents to a search, through means of a chemical test, to determine the amount of intoxicating substances in the driver's body upon the driver's arrest for [operating a vehicle under the influence]." *State v. Hoover*, 123 Ohio St. 3d 418, 2009-Ohio-4993, ¶ 14 (2009). In September 2010, when Mr. Walters was arrested, the implied consent statute provided that "[a]ny person who operates a vehicle . . . within this state . . . shall be deemed to have given consent to a chemical test or tests of the person's whole blood, blood serum or plasma, breath, or urine to determine the alcohol . . . content . . . if arrested for a violation of division (A) or (B) of section 4511.19 of the Revised Code . . . ." R.C. 4511.19.1(A)(2), effective October 16, 2009. The statute provided that "[t]he chemical test . . . under division (A)(2) of this section shall be administered at the request of a law enforcement officer having reasonable grounds to believe the person was operating . . . a vehicle . . . in violation of a division . . . identified in division (A)(2) of this section." R.C. 4511.19.1(A)(3), effective October 16, 2009.

{¶20} The Ohio Supreme Court has determined that the implied consent statute is constitutional, violating neither the search and seizure requirements of the Fourth Amendment nor the Fifth Amendment right against self-incrimination. *State v. Hoover*, 123 Ohio St. 3d 418, 2009-Ohio-4993, at ¶ 17 (citing *State v. Starnes*, 21 Ohio St. 2d 38, paragraph one of the syllabus (1970)). It has held that "[o]ne accused of intoxication has no constitutional right to refuse to take a reasonably reliable chemical test for intoxication." *Id.* at ¶ 19 (quoting *Westerville v. Cunningham*, 15 Ohio St. 2d 121, paragraph two of the syllabus (1968)). The statute in effect in September 2010 required an officer who has arrested someone for operating

under the influence to "give advice in accordance with [Section 4511.19.2]" by reading to the person the "form" contained in Section 4511.19.2(B) before requesting that the person submit to a chemical test. R.C. 4511.19.2(B), effective April 7, 2009. The form advised that a refusal to submit to the requested chemical tests would result in an immediate suspension of driving privileges and, if the person has a prior conviction for operating under the influence, a refusal would result in "increased penalties" upon conviction. R.C. 4511.19.2(B).

{¶21} Thus, the General Assembly eliminated the requirement of actual consent under these circumstances. *City of Twinsburg v. Lisch*, 9th Dist. Nos. 19627, 19628, 2000 WL 150755, *5 (Feb. 9, 2000) (quoting *State v. O'Grisek*, 9th Dist. No. 2130-M, 1993 WL 46651, *3 (Feb. 24, 1993)). Under the statutory scheme, "a chemical test administered in accordance with R.C. [4511.19.1] following arrest, pursuant to implied consent, does not constitute an unreasonable search and seizure." *Id.* "[T]he exclusionary rule will not ordinarily be applied to suppress evidence which is the product of police conduct that violates a statute but falls short of a constitutional violation, unless specifically required by the legislature." *State v. French*, 72 Ohio St. 3d 446, 449 (1995); see *State v. Hannon*, 1st Dist. Nos. C-950289, C-950290, 1995 WL 763677, *2 (Dec. 29, 1995). There is no dispute that the officers arrested Mr. Walters before advising him of his rights, reading the proper form, and requesting the breath test. Under these circumstances, even assuming that the officers misstated their power to forcibly draw blood from Mr. Walters, the exclusionary rule does not require suppression of the test result. Mr. Walters' third assignment of error is overruled.

## CONCLUSION

{¶22} Mr. Walters' first assignment of error is overruled. Police had probable cause to arrest because, at the moment of the arrest, police had gathered sufficient information to cause a

prudent person to believe that Mr. Walters was driving under the influence. His second assignment of error is overruled because the trial court correctly refused to suppress the results of his field sobriety tests. His third assignment of error is overruled because the trial court correctly refused to suppress the results of his chemical breath test obtained via implied consent. The judgment of the Medina Municipal Court is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CLAIR E. DICKINSON
FOR THE COURT

WHITMORE, P. J.
MOORE, J.
CONCUR

APPEARANCES:

MICHAEL L. LARIBEE, Attorney at Law, for Appellant.

GREGORY HUBER, Law Director, and ARTHUR E. FOTH, Assistant Prosecuting Attorney, for Appellee.